1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9   Rebecca Garcia, a married woman,        )   No. CV-12-1831-PHX-LOA
                                            )
10              Plaintiff,                   )   **ORDER**
                                            )
11  vs.                                      )
                                            )
12  Coolidge Unified School District, a school)
    district in the State of Arizona,        )
13                                           )
                Defendant.                   )
14  _____ )

15          This action arises on Defendant Coolidge Unified School District's ("School District")

16  Motion for Summary Judgment, requesting summary judgment as a matter of law on Plaintiff

17  Rebecca Garcia's ("Plaintiff") cause of action brought pursuant to the Age Discrimination

18  in Employment Act ("ADEA"). (Doc. 53)  Plaintiff alleges the School District unlawfully

19  discriminated against her because of her age when it did not re-offer her a teaching contract

20  at a public elementary school for the 2011-2012 school year. The School District denies

21  Plaintiff's claim and contends there were legitimate and nondiscriminatory reasons for not

22  offering Plaintiff a teaching contract when a shrinking budget and falling student enrollment

23  required mandatory reductions in teachers and their salaries.

24          After considering the parties' briefing, relevant law, and material facts, the Court

25  concludes that the School District is entitled to summary judgment as a matter of law as there

26  is no genuine dispute of material fact on the only cause of action alleged in the Complaint.

27  Judgment will be entered in favor of the School District and the Clerk of Court will be

28  directed to terminate this action.

**I. Jurisdiction**

The District Court of Arizona has subject matter jurisdiction over this ADEA action under 28 U.S.C. §§ 1332 and 1343. The parties have expressly consented in writing to a magistrate judge presiding over all proceedings pursuant to 28 U.S.C. § 636(c). (Docs. 4, 9)

**II. Background**

On August 29, 2012, Plaintiff filed this action, claiming the School District engaged in unlawful age discrimination when it did not re-offer Plaintiff a teaching contract for the 2011-2012 school year. (Docs. 1; 18 at 2)  Plaintiff alleges that, at the time of her lay off, she was 45 years of age, was qualified to receive a teaching contract for the 2011-2012 school year, and, despite having 20 years of teaching experience with seven of those years as a School District elementary school teacher, she was wrongfully "[t]erminated and replaced by a younger teacher." (Doc. 18 at 2)  Prior to her employment with the School District, Plaintiff was a certified teacher in the California public school system for about eight years before beginning her employment with the School District in 2004. (PSOF ¶ 85)  The School District argues that the fiscal necessity to reduce teachers' salaries to achieve a balanced budget and downsizing the number of classes because of lower student enrollment were legitimate, non-discriminatory reasons for its 2011 teacher layoffs. According to the School District, a reduction in force ("RIF") rubric[1] was developed and applied equally to all teachers to fairly determine who would be laid off. When she received one of the two lowest scores compared to the other teachers at Plaintiff's school, Plaintiff was laid off without regard to her age. The School District argues there is no lawful basis for Plaintiff's age discrimination claim. (Docs. 14; 18 at 2)

It is undisputed that Plaintiff was hired in 2004 by the School District, was employed as a third grade teacher at the San Tan Heights Elementary School ("San Tan Heights") in Coolidge, Arizona through the 2010-11 school year, and was laid off in May 2011. (Doc. 54,

---

[1]A "rubric" is defined as, among others, "a guide listing specific criteria for grading or scoring academic papers, projects, or tests." *See* www.merriam-webster.com (last viewed on March 28, 2013).

Defendant's Statement of Facts ("DSOF") ¶¶ 1-2)  Plaintiff's immediate supervisor from 2008 through May 2011 was Ms. Laurie Black, the principal at San Tan Heights. (DSOF ¶ 2)  Plaintiff does not dispute the School District's contention that its student enrollment and State of Arizona funding fell during this period of time. According to the School District, its enrollment fell from 4,306 students in May 2010 to 3,975 in May 2011. (DSOF ¶¶ 3-4)  Enrollment further declined to 3,686 students by May 2012. (DSOF ¶ 5) Equalization payments from the State dropped from $16.4 million in 2009-10 to $16.0 million in 2010-11, and to $14.2 million in 2011-12. (DSOF ¶¶ 6-8)

Due to the confluence of a falling budget and student enrollment at the end of the 2009-10 school year, the School District laid off several teachers going forward to the next school year, but Plaintiff was not one of them. (DSOF ¶ 9) Principal Black did not recommend Plaintiff for layoff at that time. As the next school year progressed, student enrollment continued to decline and Principal Black was instructed to reduce more teachers at San Tan Heights by the end of the 2010-11 school year. (DSOF ¶¶ 10-11; doc. 56, Plaintiff's Statement of Facts ("PSOF") ¶ 10)  Plaintiff was one of these casualties. Of the nine district-wide teachers laid off at the end of the 2010-11 school year ending in May 2011, four were younger than Plaintiff and four were older. (DSOF ¶¶ 2, 11; PSOF ¶ 11) As a result of the School District's second consecutive year of RIFs, Plaintiff and another San Tan Heights teacher lost their jobs and a computer lab teacher's employment was terminated because her position would no longer be financially supported. (DSOF ¶ 12; PSOF ¶ 12)

**A. The San Tan Heights Rubric**

During the 2010-11 school year, and before Plaintiff's teaching contract was not renewed, the School District created a RIF committee, composed of teachers and administrators from throughout the District. (DSOF ¶ 13) While this committee ultimately drafted a scoring rubric to assist the School District's governing board in carrying out future RIFs, the rubric was not finalized until after the May 2011 RIF decisions were made. Therefore, a district-wide rubric was not available to Principal Black when she made her layoff recommendations, which included Plaintiff, to the School District's governing board

1   . (DSOF ¶¶ 14-16)   Consequently, Principal Black formed a three-person committee,

2   consisting of Principal Black, her leadership coach, and Art Moncibaez, Jr., San Tan Heights'

3   Assistant Principal, to create a rubric to use for the year-end 2010-2011 RIFs at the San Tan

4   Heights Elementary School, referred to herein as the "San Tan Heights Rubric." (DSOF ¶

5   16[2])

6       According to Principal Black, the San Tan Heights Rubric was intended to be

7   objective, not subjective; was based on seminars that the School District's RIF committee

8   held for creating a district-wide rubric the following year; and was formed after consulting

9   the School District's then-current RIF policy. (DSOF ¶¶ 16-18)   "I wanted it to be not

10  personal[,]" testified Principal Black. (Doc. 54-1, Exh. C , Black Deposition, at p. 6 of

11  17:1-3)   Assistant Principal Moncibaez testified that because neither the School District's

12  RIF committee had yet developed a rubric nor had its governing board approved a rubric for

13  district-wide application, "[w]e kind of had to create our own, to be equitable amongst all the

14  teachers at San Tan Heights." (DSOF, ¶ 19, Exh. D, Moncibaez Deposition at p. 14)   Mr.

15  Moncibaez testified that he had "very little" involvement with the development of the San

16  Tan Heights Rubric and credited Principal Black for its development, including its

17  categories. (Doc. 54-1, Exh. D, Moncibaez Deposition at p. 33 of 90:1-19)   Mr. Moncibaez

18  acknowledged that when Principal Black asked him to review a draft of the San Tan Heights

19  Rubric, Moncibaez responded that "[i]t looked fair and equitable and we should use it." (Doc.

20  54-1, Exh. D, Moncibaez Deposition at p. 34 of 90:20-25)

21

22          [2] Plaintiff agrees that the San Tan Heights Rubric was used during the 2010-2011

23  school year to reduce the School District's employees for the 2011-12 school year and
    Assistant Principal Moncibaez was a member of this rubric committee. (PSOF ¶ 16, 19)

24  Plaintiff disputes, however, that Art Moncibaez "create[d] the rubric used for the 2010-2011
    reduction in force[.]" (PSOF ¶ 16) The Court's review of his deposition testimony confirms

25  that, after identifying the subject rubric, Mr. Moncibaez testified, "This is the rubric that *we*

26  *created* when we had to do our reduction in force." (Doc. 56-1, Exh. C, Deposition of Art
    Moncibaez at page 33 of 90) (emphasis added). However, even when construing the evidence

27  in a light most favorable to Plaintiff, as a district court must, the degree of Mr. Moncibaez'

28  participation in creating the San Tan Heights Rubric is immaterial. *See Scott*, 550 U.S. at
    378.

1    The San Tan Heights Rubric scored teachers based on the following categories:

2  Endorsements, Years Teaching in AZ, Attendance, Contributions, Parent/Student

3  Satisfaction, Academic Progress of Students, and Evaluations/Walk Throughs. (DSOF ¶ 20;

4  doc. 54-1, Exh. A at 3-4; PSOF ¶ 20)  A grade and points were assigned as a score in each

5  category.  Plaintiff does not dispute that when the final scores were calculated, Plaintiff

6  received one of the two lowest scores of all San Tan Heights teachers – 15 out of a possible

7  42 points, or 36 percent. (DSOF ¶ 21; PSOF ¶ 21[3]) 54. The other teacher who received the

8  other low score, 38 percent, was also terminated as part of the RIF. (DSOF ¶ 54) Principal

9  Black recommended that Plaintiff and the other teacher be laid off for the 2011-2012 school

10  year, and the School District adopted her recommendations. As of August 1, 2011, there were

11  35 teachers at San Tan Heights; eight were older than Plaintiff, two were Plaintiff's age (45),

12  six were between 40 and 44, and the remaining 19 were younger than 40. (DSOF ¶ 60)

13  Besides Plaintiff, the other teacher who was laid off from San Tan Heights at the end of the

14  2010-2011 school year was also in the protected class. (PSOF ¶ 86)

15    When Plaintiff was scored on the San Tan Heights Rubric, Plaintiff did not receive

16  any points in the Endorsements Category.[4] (DSOF ¶ 22; PSOF ¶ 22)  Plaintiff, however,

17  received the maximum points for her number of years teaching in Arizona in the Years-

18  Teaching-in-AZ Category. (DSOF ¶ 24)  Plaintiff's attendance score was third best, missing

19  only 2.5 days, which tied for the highest score in the Attendance Category. (DSOF ¶ 25)  In

20  the Contributions Category (volunteer committee work and mentoring), Plaintiff received a

21  score of "fair" for her service on the RIF Committee in the 2010-11 school year as Plaintiff

22  attended three of the four 2010-11 RIF Committee meetings. (DSOF ¶¶ 26-27; PSOF ¶ 26-

23  27) Plaintiff was graded "poor-fair" for her activities on the Character Counts Committee,

24

25    [3] The School District's Reply adjusts Plaintiff's ranking as "the second lowest score."

26  (Doc. 57 at 2)

27    [4] Plaintiff disagrees, and the School District concedes this point in its Reply, that

28  Plaintiff obtained an endorsement for Structured English Immersion in February 2010, but,
according to the School District, this additional point would not have affected Plaintiff's
overall low ranking or layoff. (PSOF ¶ 23)

"fair" for mentoring, and "fair" for her contributions. Principal Black gave Plaintiff a "poor to fair" rating as a Character Counts Committee member because Principal Black believed Plaintiff was not an active Committee member, did not assist in planning the Committee's activities, and failed to put in as much time and effort into it as other members did. (DSOF ¶ 28) Principal Black asked Plaintiff to mentor a student-teacher in an attempt to get Plaintiff "up and teaching." (DSOF ¶ 29) Principal Black, however, was dissatisfied with Plaintiff's mentoring and testified that the student-teacher was usually the one doing the teaching when Principal Black did her walk-throughs that semester.[5] (DSOF ¶ 30)  For this reason, she gave Plaintiff a "fair" rating for being a mentor. (*Id.*)

Principal Black testified to receiving calls from parents complaining about Plaintiff, and, therefore, assigned Plaintiff a low score (one out of six) in the Parent/Student-Satisfaction Category for this reason. (DSOF ¶ 31) In the category of Academic Progress of Students, Plaintiff tied for the lowest score in the school. (DSOF ¶ 32) The School District contends that Plaintiff also performed poorly during informal walk-throughs, scoring the lowest of all teachers in the school in the Evaluations/Walk-Throughs Category. (DSOF ¶ 33) The San Tan Heights Rubric's notes for Plaintiff indicate that, for every walk-through, there was "no instruction[;] teacher [Plaintiff] at desk[;] kids on [worksheet]." (*Id.*)  The School District points to Principal Black's testimony that during most of Principal Black's walk-throughs, Plaintiff was simply sitting at her desk while her students worked on worksheets.[6] (DSOF ¶ 29)  These, the School District explains, were the reasons Plaintiff's

---

[5] Plaintiff provided the affidavit of Juan Lopez, Plaintiff's student teacher from August 2010 through October 2011, indicating, *inter alia*, how Plaintiff positively assisted him as his mentor and that Principal Black "never consulted with [him] about my experience or asked any questions of [him] related to [Plaintiff's] efforts as [his] mentor. (PSOF ¶ 126, Exh. H, doc. 56-1 at 72-74)

[6] Mr. Moncibaez testified that when he conducted walk-throughs, Plaintiff's students were often doing worksheets while Plaintiff was just sitting at her desk or even talking on her cell phone instead of teaching. (DSOF ¶¶ 34-35)  Plaintiff disputes whether this was a cell phone or a classroom phone, indicating Plaintiff was required to answer the school

phone. (PSOF ¶¶ 34, 138) (citing Exh. D, Plaintiff's Depo 26:5)

1  scores in this category were so low.

2          Plaintiff started the 2010-11 school year with approximately 26 students, a normal
3  class load. Plaintiff's class shrank to seven students when Plaintiff was recommended for
4  layoff. (DSOF ¶ 48) On April 1, 2011, Principal Black, age 55 at this time, and Mr.
5  Moncibaez, age 42, informed Plaintiff that she had been recommended to the superintendent
6  for layoff. (DSOF ¶¶ 49-51) The superintendent, then 57, accepted Principal Black's
7  recommendation and forwarded it to the School District's governing board for possible
8  approval. (DSOF ¶ 52) The Governing Board (four of the five members were older than
9  Plaintiff at the time) voted to lay Plaintiff off, effective at the end of the school year. (DSOF
10 ¶ 53) The teacher with the other low score on the San Tan Heights Rubric was also notified
11 that she had been recommended for layoff. (DSOF ¶ 54)  Plaintiff taught through the end of
12 the 2010-2011 school year and received her full salary. (DSOF ¶ 55)

13         On August 23, 2011, Plaintiff filed a charge of age discrimination with the EEOC.
14 (DSOF ¶ 56) The EEOC dismissed Plaintiff's charge of discrimination on May 31, 2012,
15 stating that it was "unable to conclude that the information obtained establishes violations
16 of the statutes." (DSOF ¶ 57)  Plaintiff filed this action timely on August 29, 2012. (Doc. 1)

17         Plaintiff acknowledges that declining funding levels and student population are
18 legitimate reasons for a school district to consider teacher layoffs. (DSOF ¶¶ 66-67; PSOF
19 ¶¶ 66-7) (citing Garcia Depo 31:24-32:3 - 32:15-19) She also concedes that "[u]nder Black's
20 rubric analysis, Plaintiff received the lowest score of all teachers." (Doc. 55 at 3) (citing
21 DSOF ¶ 21; PSOF ¶ 21) Nevertheless, Plaintiff challenges the San Tan Heights Rubric itself
22 and Principal Black's scoring of Plaintiff's low grade on it, claiming she "[w]as scored
23 incorrectly or unfairly on many of the categories[.]" (*Id*.)  Plaintiff testified in her deposition
24 that Principal Black "created and used a biased age discriminatory subjective rubric to choose
25 which teachers to layoff to be replaced by younger teachers." (DSOF ¶ 70)  Plaintiff also
26 argues the San Tan Heights Rubric "[i]gnored prior district policy that included overall
27 contributions and instead only used contributions for the 2010-2011 school year." (*Id*.)
28 Plaintiff's examples of unfair scoring are:

· Garcia's main duties on the Character Counts Committee were to organize, conduct, and emcee the assemblies for middle grades and she also attended and was responsible for setup at breakfasts with the Principal; Garcia had a huge role conducting the assemblies. (PSOF ¶ 107) When the head of committee resigned [in October, 2010, Mrs. Basden] gave her binder with agendas and documentation of [duties of each member of the Committee to Principal Black.] [Black] didn't review it before assigning Garcia a score for Contributions. (PSOF ¶¶ 108-9)

· Black admits she did not consult any documents in determining her rating of Garcia as Fair on the RIF committee. (PSOF ¶ 112) Black testified in her deposition that Moncibaez told her that Garcia didn't really contribute to the RIF committee. (PSOF ¶ 118) Moncibaez testified to the contrary in his deposition that Black did not ask him his opinion on Garcia's role on the district RIF committee. (PSOF ¶ 119)

· Black gave Garcia a score of Fair on mentoring. (DSOF/PSOF ¶ 27) Black admitted she did not consult any documents in determining Garcia's [mentoring] rating. (PSOF ¶ 121) Black asked Garcia to mentor a [student] teacher. (PSOF ¶ 122)  When selecting a mentor, Moncibaez looks for the strongest teacher in the grade level. (PSOF ¶ 125) Juan Lopez was assigned to be Garcia's student teacher from August 2010 through October 2011. (PSOF ¶ 126) [In an affidavit,] Lopez stated that Garcia modeled teaching practices, assisted with lesson planning, taught him classroom techniques, rated his performance and provided him with valuable feedback for improvement as he learned to be a teacher. (PSOF ¶ 126)

· Black marked Garcia down for parent complaints yet she did not retain notes of parent complaints of Garcia. (PSOF ¶ 128) Black does not remember the nature of the parent complaints. (PSOF ¶ 129) Garcia did not receive any discipline regarding alleged parent complaints nor did she personally receive any complaints from parents. (PSOF ¶¶ 130, 131)

(*Id*. at 3-4)

Plaintiff believes that the School District should have considered her most recent evaluation in October, 2010, which "[c]ontained many positive comments by her evaluator Moncibaez," before her lay-off.[7] (Doc. 55 at 4[8]) (citing PSOF ¶ 134)  Plaintiff cites this and

---

[7] On October 8, 2010, when Art Moncibaez evaluated Plaintiff, Plaintiff received 71 "Proficient" scores and no scores in any other category. (DSOF ¶ 47; PSOF ¶ 135)

[8] Plaintiff's other criticisms or alleged failures cited in her Response, such as, Plaintiff's evaluations did not include "any type of improvement plan" for Plaintiff and Mr. Moncibaez' failure to author a letter of recommendation which Plaintiff requested, are not further developed herein because they are speculative, immaterial, and do not show, or have a tendency to show, a discriminatory *animus* that Plaintiff was laid off by the School District because of her age. (Doc. 55 at 4)  For example, when asked what evidence she had that age discrimination was Mr. Moncibaez's real reason for not giving her a letter of recommendation, Plaintiff responded, "*It's a gut feeling* now based on the knowledge that I have from all the other things that have occurred." (DSOF ¶ 83; PSOF ¶ 83) (quoting

other failures as additional criticism of what Principal Black and the School District did not consider in deciding who should be laid off.

Not surprisingly, Plaintiff disagrees with Principal Black's scoring of Plaintiff on the San Tan Heights Rubric. In her summary judgment response, Plaintiff points to her own self-serving, speculative, and mostly inadmissible deposition testimony, as evidence of the School District's discriminatory intent, claiming Plaintiff's age was the real reason Principal Black recommended Plaintiff be laid off. For example, when Plaintiff asked to clarify the factual basis for her statement that "Black wanted to get rid of" four older teachers, Plaintiff explained, "Because she put them first on the rubric. That's one of the reasons. *I know that's got to be part of it*." (DSOF ¶¶ 74-5; PSOF 74-75) (quoting Plaintiff's Depo 141:13-17) (emphasis added). To show age bias against older teachers, Plaintiff testified that Principal Black "[h]ad a tendency to associate with the younger staff members, the younger teachers on the staff socially. The older teachers were uncomfortable, because there were many times when we felt left out socially." (DSOF ¶ 76, DSOF ¶¶ 76, 79)   Younger teachers brought Starbucks to Principal Black and Principal Black gave younger teachers special jobs to do and more opportunities to do things at the school than some of the older teachers. (PSOF ¶ 77; DSOF ¶ 77)   Plaintiff testified that Principal Black overlooked the tardiness of one younger teacher, and young teachers with parental complaints and poor classroom climate "got to stay. They got treated nicely." (DSOF ¶ 77)   She also testified that one parent informed her she had asked to have her son removed from a young teacher's class "because it was so bad," but Plaintiff also conceded that she did not speak with any other parents, other teachers, or anyone from school administration about this particular teacher. (DSOF ¶¶ 78-79; PSOF ¶¶ 78-79)   According to Plaintiff, Principal Black "[m]ade disability related comments towards another teacher who was also subject to the RIF." (Doc. 55 at 5) (citing

_____

Garcia Depo 106:3-9) (emphasis added)

1   PSOF ¶ 81, Exh. B, Plaintiff's Depo 84:18[9])

2         Finally, Plaintiff claims she was replaced the following school year by a younger

3   teacher who was 25 years of age. (PSOF ¶¶ 61, 153-156)  According to Plaintiff, Sara C was

4   allowed to transfer into San Tan Heights' third grade from another school in the School

5   District and Principal Black approved the transfer. (*Id.*)  Plaintiff concedes Sara C was an

6   excellent teacher, and wanted to transfer to San Tan Heights because Sara C's husband was

7   working at San Tan Heights. (PSOF ¶ 61)  Plaintiff contends, however, that Sara C taught

8   at the same school, in the same classroom, teaching the same grade as Plaintiff in the school

9   year immediately following Plaintiff's RIF. (PSOF ¶¶ 153-56) Plaintiff speculates that this

10  replacement "teacher who was only 25 years of age . . . must have [had] inferior

11  qualifications as a teacher" than Plaintiff. (Doc. 55 at 10) According to Plaintiff, "[t]his

12  replacement [teacher] creates a question of fact or establishes the fact in Garcia's favor." (*Id.*

13  at 11) Plaintiff, however, fails to provide any admissible evidence that this 25 year-old

14  teacher was less qualified than Plaintiff simply because she was substantially younger than

15  Plaintiff.

16         In its Reply, the School District argues Plaintiff "attempts to manufacture [issues]

17  based on mischaracterizations of facts and trifling differences in immaterial details." (Doc.

18  57 at 1)  The School District claims that Plaintiff "has failed to carry her burden on the

19  second and fourth elements" of an age discrimination claim, "contends incorrectly that she

20  was replaced by a younger, less qualified teacher," has not presented any admissible evidence

21  that the San Tan Heights Rubric was created with a discriminatory intent, and the so-called

22  "disputed facts" Plaintiff identifies are either not disputes at all or are not disputes of material

23  facts within the meaning of Rule 56, Fed.R.Civ.P. (*Id.* at 1-3)

24

25

26         [9] This is an incorrectly cited reference to the record. Although it is not required to do
    so, the Court attempted to find the correct cite, but was unable to do so. Thus, assuming this
27  disability-related statement has some relevance and materiality, which the Court doubts, no
    consideration is given to this statement. *See Carmen v. San Francisco Unified School*
28  *District*, 237 F.3d 1026, 1029 (9th Cir. 2001).

1   **III. Summary Judgment**

2     When viewing the facts in the light most favorable to the non-moving party, a district

3   "[c]ourt shall grant summary judgment if the movant shows that there is no genuine dispute

4   as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a),

5   Fed.R.Civ.P. Once the moving party has satisfied its initial burden, the moving party is

6   entitled to summary judgment if the non-moving party fails to present by "[c]iting to

7   particular parts of materials in the record, including depositions, documents, electronically

8   stored information, affidavits or declarations, stipulations (including those made for purposes

9   of the motion only), admissions, interrogatory answers, or other materials; or . . . showing

10  that the materials cited do not establish the absence or presence of a genuine dispute, or that

11  an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1)(A)-

12  (B), Fed.R.Civ.P.; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

13    In reviewing evidence at the summary judgment stage, a district court does not make

14  credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in

15  the light most favorable to the nonmoving party. *See Soremekun v. Thrifty Payless, Inc.*, 509

16  F.3d 978, 984 (9th Cir. 2007). The evidence presented by the parties must be admissible.

17  Rule 56(c)(4), Fed.R.Civ.P. ("An affidavit or declaration used to support or oppose a motion

18  must be made on personal knowledge, set out facts that would be admissible in evidence, and

19  show that the affiant or declarant is competent to testify on the matters stated."),

20  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

21  genuine issues of fact and defeat summary judgment. *See Nelson v. Pima Community*

22  *College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not

23  create a factual dispute for purposes of summary judgment").

24    "The mere existence of a scintilla of evidence in support of the non-moving party's

25  position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th

26  Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are

27  irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty*

28  *Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of

1   the suit under the governing law. *Id*. at 248-49; *Thrifty Oil Co. v. Bank of America Nat'l*

2   *Trust & Savings Assn*., 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a

3   material fact if there is sufficient evidence for a reasonable jury to return a verdict for the

4   non-moving party. *Id*., at 248; *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.

5   2006). When ruling on a summary judgment motion, a district court construes the facts, as

6   well as all rational inferences therefrom, in the light most favorable to the non-moving party.

7   *Scott v. Harris*, 550 U.S. 327, 378 (2007) (citing *United States v. Diebold, Inc*., 369 U.S.

8   654, 655 (1962) (*per curiam*).

9      Whatever facts which may establish a genuine issue of fact must *both* be in the

10  district court's file and set forth in the non-moving party's response. *Carmen v. San*

11  *Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001); Rule 56(c)(3),

12  Fed.R.Civ.P.  "The district court need not examine the entire file for evidence establishing

13  a genuine issue of fact, where the evidence is not set forth in the opposing papers with

14  adequate references so that it could conveniently be found." *Id.*

15     "As a general matter, the plaintiff in an employment discrimination action need

16  produce very little evidence in order to overcome an employer's motion for summary

17  judgment." *Diaz v. Eagle Produce Ltd. P'ship*., 521 F.3d 1201, 1207 (9th Cir. 2008) (quoting

18  *Chuang v. Univ. of Cal. Davis, Bd. of Trs*., 225 F.3d 1115, 1124 (9th Cir. 2000)).

19  **IV. The Age Discrimination in Employment Act**

20     The ADEA makes it unlawful for an employer "[t]o discharge any individual or

21  otherwise discriminate against any individual . . . because of such individual's age." 29

22  U.S.C. § 623(a)(1). ADEA claims based on circumstantial evidence of discrimination are

23  evaluated by using the three-step, burden-shifting framework established in *McDonnell*

24  *Douglas Corp. v. Green*, 411 U.S. 792 (1973).[10] *See Diaz*, 521 F.3d at 1207 (citations

25

26     [10] When a plaintiff alleges disparate treatment based on direct evidence in an ADEA

27  claim, the *McDonnell Douglas* burden-shifting analysis is inapplicable in determining

28  whether the evidence is sufficient to defeat an employer's summary judgment motion. *See*

    *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004) (citing, *inter alia*,

omitted). Under this well-established burden-shifting analysis, the employee must first establish a *prima facie* case of age discrimination. *Id.* (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). If the employee satisfies this initial step, a presumption of discrimination arises and the burden shifts to step two, requiring "[t]he employer to articulate a legitimate, non-discriminatory reason for its adverse employment action." *Id.* If the employer satisfies its burden, step three requires the employee to "[p]rove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Id.* As discussed in more detail below, the plaintiff retains the burden of persuasion, at all times, to prove that age was the "but-for" cause of the employment termination. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

"The employee in an age discrimination case makes a prima facie case of disparate treatment by demonstrating that [s]he was (1) at least forty years old, (2) performing h[er] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of discrimination." *Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 (9th Cir. 2012) (quoting *Diaz*, 521 F.3d at 1207) (citation and internal quotation marks omitted). "An inference of discrimination can be established by showing that others not in [plaintiff's] protected class were treated more favorably." *Id.* (internal quotation marks omitted). In the Ninth Circuit, the requisite degree of proof necessary to establish a *prima facie* case for an ADEA claim on summary judgment "[i]s minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citations omitted); *see also E.E.O.C. v. TIN, Inc.*, 349 Fed.Appx. 190, 192 (9th Cir. 2009).

There are two methods by which a disparate treatment plaintiff can meet the standard of proof required by Fed.R.Civ.P. 56(c). *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). "First, a disparate treatment plaintiff may offer evidence,

---

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)).

direct or circumstantial, 'that a discriminatory reason more likely motivated the employer' to make the challenged employment decision." *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). "Alternatively, a disparate treatment plaintiff may offer evidence 'that the employer's proffered explanation is unworthy of credence.'" *Id*. Using the second method, "a plaintiff may defeat a defendant's motion for summary judgment by offering proof that the employer's legitimate, nondiscriminatory reason is actually a pretext for [age] discrimination." *Id.* (footnote omitted). A plaintiff may not, however, defeat an employer's summary judgment motion merely by denying the credibility of the employer's proffered reason for the challenged employment action, *Wallis*, 26 F.3d at 890, or relying solely on the plaintiff's subjective beliefs. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (concluding that, despite the plaintiff's claims that she had performed her job well, "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact").

At the third step of the analysis, a plaintiff may prove pretext with indirect or circumstantial evidence that shows the employer's explanation is unworthy of credence. *See Burdine*, 450 U.S. at 256; *Vasquez v. County of L.A.*, 349 F.3d 634, 641 (9th Cir. 2004). For example, a plaintiff "may demonstrate pretext either directly by persuading the court that a discriminatory reason likely motivated [the employer] or indirectly by showing that [the employer's] proffered explanation is unworthy of credence." *Diaz*, 521 F.3d at 1212; *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170-71 (9th Cir. 2007); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). A showing that an employer treated similarly situated employees outside a plaintiff's protected class more favorably is probative of pretext. *See Vasquez*, 349 F.3d at 641 (citing *Gerdom v. Cont'l Airlines, Inc*., 692 F.2d 602, 609 (9th Cir. 1982) (*en banc*)). When the evidence is direct, "very little" evidence is required to survive summary judgment, but when the evidence is indirect, that indirect evidence "must be specific and substantial to defeat the employer's motion for summary judgment." *EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009); *Coghlan v. Am. Seafoods Co. LLC*, 413

F.3d 1090, 1095 (9th Cir. 2005).[11] Statistical evidence, the employer's internal inconsistencies, and "shifting explanations" are examples of forms of indirect evidence that may tend to show pretext. *See e.g.*, *Diaz*, 521 F.3d at 1214; *Coghlan*, 413 F.3d at 1095; *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996); *see also  Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (evidence of pretext should show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence").

An employee must also show by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision. *See Gross*, 557 U.S. at 177-78. "Under 'but-for' causation, a plaintiff must show that age was 'the reason' for the adverse employment action; there is no ADEA liability for 'mixed motive' employment actions." *Elliott v. Fiesta Palms, LLC*, 2011 WL 940742, at *3 (D. Nev. March 15, 2011) (citing *Gross*, 557 U.S. at 177 n. 3) ("Congress amended Title VII to allow for employer liability when discrimination was a motivating factor for any employment practice, even though other factors also motivated the practice, but did not similarly amend the ADEA . . . We must give effect to Congress' choice.") (internal quotations and citations omitted); *see also Reynolds v. Tangherlini*, 737 F.3d 1093, 1103 (7th Cir. 2013).

**V. Discussion**

The Court finds Plaintiff has provided sufficient proof to establish a *prima facie* ADEA claim for summary judgment purposes.  *See Diaz*, 521 F.3d at 1207; *Wallis*, 26 F.3d at 889 (the amount of proof "[i]s minimal and does not even need to rise to the level of a

---

[11] One district court has intimated that Ninth Circuit case law that requires a plaintiff who relies on circumstantial evidence to show pretext by "specific" and "substantial" evidence has likely been overruled. *See Rosales v. Career Systems Development Corp.*, 2009 WL 3644867, at *11 n. 11 (E.D. Cal. Nov. 2, 2009) (citing, *inter alia*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).

preponderance of the evidence.") Here, because there is no direct evidence of age discrimination, the *McDonnell Douglas* three-step, burden-shifting analysis applies to determine whether Plaintiff's proffered evidence is sufficient to defeat the School District's summary judgment motion. *See Enlow*, 389 F.3d at 812. The School District does not dispute that Plaintiff was a member of the protected class, *i.e.*, teachers over the age of 40, and was involuntarily laid off (discharged).  The School District, however, argues that Plaintiff has not met the second and fourth elements to establish a *prima facie* case as "[s]he has not shown that she was satisfactorily performing her job[,]" doc. 53 at 7, or that the younger teacher that replaced Plaintiff was as or less qualified as Plaintiff. The Court disagrees. At the summary judgment stage, because a district court must make all rational inferences from the evidence in favor of the nonmoving party, and Plaintiff has offered some evidence that she was performing her job satisfactorily, like her 2010 evaluation by Mr. Moncibaez, and she was arguably replaced by a substantially younger teacher as qualified as Plaintiff, Plaintiff has established a *prima facie* case of age discrimination. *See Wallis*, 26 F.3d at 889. Under the *McDonnell Douglas* analysis, a presumption of discrimination now arises and the burden now shifts to step two, requiring the School District "[t]o articulate a legitimate, non-discriminatory reason for its adverse employment action." *Diaz*, 521 F.3d at 1207.

The Court finds that the School District has met its burden and demonstrated that the fiscal necessity to reduce teachers' salaries to achieve a balanced budget and downsizing the number of classrooms due to lower student enrollment were legitimate, non-discriminatory reasons for the San Tan Heights 2011 teacher layoffs. Proceeding now to step three, Plaintiff must "[p]rove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination[,]" meant to conceal the real, discriminatory reason for Plaintiff's layoff. *Id*. Plaintiff has failed to do so.

Plaintiff has not presented any statistical or direct evidence to show that Plaintiff was laid off because of her age. There is no showing of internal School District inconsistencies, or shifting explanations by the School District to cast doubt on its stated reasons for selecting Plaintiff for layoff. Plaintiff's arguments that her scoring on the San Tan Heights Rubric by

Principal Black was too subjective, incorrect, and unfair are unavailing to create a triable question of fact of age discrimination. "While a subjective evaluation system can be used as cover for illegal discrimination, subjective evaluations are not unlawful per se and their relevance to proof of a discriminatory intent is weak." *Coleman*, 232 F.3d at 1285. In other words, the presence of subjective criteria in an evaluation rubric is not *per se* evidence of intentional discrimination. *See Green v. Maricopa County Community College School Dist.*, 265 F.Supp.2d 1110, 1125 (D. Ariz. 2003) (citing *Casillas v. United States Navy*, 735 F.2d 338, 345 (9th Cir. 1984)); *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 780 (8th Cir. 1995) ("[T]he presence of subjectivity in employment evaluations is itself not a grounds for challenging those evaluations as discriminatory."). That the School District may have "[u]sed a faulty evaluation system does not support the inference that [the School District] discriminated on the basis of age." *Coleman*, 232 F.3d at 1285. As noted by the Eighth Circuit, "[i]t is not unlawful for an employer to make employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between employees, or even unsound business practices, . . . as long as these decisions are not the result of discrimination based on an employee's membership in a protected class." *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 959 (8th Cir. 2001) (quoting *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1120 (8th Cir. 1997) (internal quotation marks omitted). In *Casillas*, the Ninth Circuit established that a plaintiff may combine proof of reliance on subjective criteria with other evidence to show pretext. *Casillas* instructed that "[a]n employer's use of subjective criteria is to be considered by the trial court with the other facts and circumstances of the case." 735 F.2d at 345. Moreover, "[t]here is nothing inherently discriminatory in an employer choosing to rely on recent performance more heavily than past performance in deciding which employees to terminate during a [reduction in force]." *Dammen v. UniMed Med. Ctr.*, 236 F.3d 978, 982 (8th Cir. 2001) (citation and internal quotation marks of omitted).  Even when considering Principal Black's use of some subjective scoring for Plaintiff on the San Tan Heights Rubric and failure to consider all of Plaintiff's body of work over her 20-year teaching career, the last seven years with the School District, or Plaintiff's 2010 teacher evaluation, Plaintiff's

1   claim of pretext still fails due to the lack of substantial evidence to create a triable issue of
2   fact.

3      Plaintiff has made no showing that the School District treated a similarly situated
4   employee outside Plaintiff's protected class (younger than 40) who scored poorly on the San
5   Tan Heights Rubric more favorably than Plaintiff. In other words, there is no evidence that
6   a San Tan Heights teacher, who was outside the protected age class, received a San Tan
7   Heights Rubric score as low or lower as Plaintiff's but was not laid off.

8      Plaintiff has failed to meet her burden to raise a question of fact whether the School
9   District's asserted reason for Plaintiff's layoff was merely a pretext for age discrimination.
10  *See Cotton v. City of Alameda*, 812 F.2d 1245, 1249 (9th Cir. 1987) ("The ADEA does not
11  make it unlawful for an employer to do a poor job of selecting employees. It merely makes
12  it unlawful to discriminate on the basis of age."); *Wingate v. Gage County Sch. Dist.*, 528
13  F.3d 1074, 1080 (8th Cir. 2008) (rejecting an inference of discrimination where employer did
14  not rely exclusively on subjective criteria, but also considered objective criteria). Moreover,
15  Plaintiff's "subjective personal judgments of [her] competence alone do not raise a genuine
16  issue of material fact." *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir.
17  1996).

18     Plaintiff has also not raised a triable issue of fact whether her age was the but-for
19  cause of her selection for layoff.  There is insufficient admissible evidence that Plaintiff was
20  laid off because of her age, rather than, as the School District has shown, because Plaintiff
21  received one of the two lowest scores on the San Tan Heights Rubric used to evaluate all
22  teachers at the San Tan Heights Elementary School. *See Davis v. Team Elec. Co.*, 520 F.3d
23  1080, 1094 (9th Cir. 2008) (to meet its burden, employer laying off group of employees due
24  to economic downturn must explain why it selected plaintiff "in particular" for a layoff). The
25  School District has demonstrated non-age related, legitimate reasons why teacher layoffs
26  were necessary and why Plaintiff in particular was selected for layoff. The teacher with the
27  other lowest score was also part of the RIF. (DSOF ¶ 54) Of the two employees terminated
28  due to the reduction in force at San Tan Heights, both were in the protected class over the age

of forty. (PSOF ¶ 86)  Nevertheless, the School District identified nine teachers who were laid off at the end of the 2010-11 school year; four were older than Plaintiff and four were younger. (DSOF ¶ 11)  There are no disputed issues of material fact surrounding the reason Plaintiff was laid off. Accordingly, the Court will grant the School District's summary judgment motion on Plaintiff's claim that the School District violated the ADEA.

## VI. Conclusion

For the reasons set forth above, Plaintiff has not raised a genuine issue of material fact on her claim of age discrimination. Specifically, Plaintiff has not persuaded the Court that a discriminatory reason likely motivated the School District or indirectly shown that the School District's proffered explanations for terminating Plaintiff's employment are unworthy of credence. *See Diaz*, 521 F.3d at 1212. Plaintiff has failed to present sufficient evidence that the School District's legitimate, non-discriminatory reasons for terminating Plaintiff's employment were a pretext for unlawful age discrimination or that Plaintiff's age was the but-for cause of Plaintiff's layoff.  The School District is entitled to summary judgment as a matter of law.

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment, doc. 53, is **GRANTED**. The Clerk of Court is kindly directed to enter judgment in favor of Defendant and terminate this action.

Dated this 29th day of May, 2014.

Lawrence O. Anderson
United States Magistrate Judge